IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| OTTO E. THORNBURG, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) No. |
| vs. | ) ) ) Hon. |
| FORD MOTOR COMPANY, | ) ) |
| Defendant. | ) ) ) |

# CLASS ACTION COMPLAINT AND JURY DEMAND

## INTRODUCTION

1. Plaintiff OTTO E. THORNBURG brings this class action against Defendant FORD MOTOR COMPANY ("Defendant"), which owns and operates the Ford Kansas City Assembly Plant (the "Plant") located in the Village of Claycomo, Clay County, Missouri. Through its operation of the Plant, Defendant released, and continues to release, noxious odors that invade Plaintiff's property, causing property damage through negligence, gross negligence and nuisance.

## PARTIES

2. At all times relevant hereto, Plaintiff Otto E. Thornburg has been a citizen of Missouri and has resided at 6405 River Road, Pleasant Valley, Clay County, Missouri 64068.

3. Defendant Ford Motor Company is a for-profit company incorporated in the State of Delaware and maintaining its principal place of business in the State of Michigan.

4. Defendant's Plant is located in Clay County at 8121 US Highway 69, Village of

Claycomo, Clay County, Missouri 64119.

5. Upon information and belief, Defendant, including its predecessors and agents, either constructed or directed the construction of the Plant and exercised control and ownership over the Plant at all relevant times hereto.

6. Defendant may be served with process through its registered office at 120 South Central Avenue, Clayton, Missouri 63105.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d).

8. There are 100 or more Class Members and the aggregate amount in controversy exceeds Five Million Dollars ($5,000,000.00) exclusive of interest and costs.

9. Plaintiff is a citizen of Missouri, and Defendant is a citizen of Delaware.

10. Jurisdiction is proper in this Court pursuant to CAFA.

11. Independent of and in addition to original jurisdiction under CAFA, this Court has original jurisdiction because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1).

12. The Court has personal jurisdiction over Defendant, who has at least minimum contacts with the State of Missouri because it regularly conducts substantial business in Missouri through the ownership and operation of the Plant.

13. Defendant at all relevant times hereto conducted substantial business in this District through the Plant, located in Clay County, and many of the acts, occurrences and/or transactions alleged in this Complaint occurred in this District.

14. Venue in the United States District Court for the Western Division of the Western

2

District of Missouri is proper because Defendant transacts business within this District and a substantial portion of the events giving rise to the claims at issue in this Complaint occurred in this District.

## GENERAL ALLEGATIONS

15. Defendant operates an automotive manufacturing facility located on a 1,269-acre site surrounded by residential properties.

16. Plaintiff resides within two miles of the Plant's property boundary.

17. Plaintiff's property has been and continues to be physically invaded by noxious odors.

18. The noxious odors which entered Plaintiff's property originated from Defendant's Plant.

19. Defendant's industrial operations at the Plant include, *inter alia*, automotive assembly and body paint application.

20. At the Plant, Defendant produces the Ford Transit and the Ford F-150 on two separate, independent production lines.

### *Defendant's Paint Shop Operation*

21. Defendant also operates and manages the Ford Kansas City Truck Paint facility ("Paint Shop"), which is adjacent to the main assembly plant.

22. The Paint Shop performs industrial painting of automobiles, including the Ford F-150 and the Ford Transit.

23. The Paint Shop executes Defendant's industrial painting process for each vehicle based on Defendant's designs, instructions, and specifications.

24. Defendant utilizes two distinct painting and paint curing processes for the F-150

and the Transit lines.

25. Defendant's industrial painting process utilizes robotic spray paint operations that are performed in spray booths.

26. Defendant employs downdraft spray booths to capture emissions from its paint coating operations for both the F-150 and Transit lines.

27. Defendant's industrial painting process utilizes ovens to cure, or dry, the paint coats.

28. Defendant intentionally and exclusively utilizes solvent-based paints on all makes and models of vehicles painted at the Paint Shop.

29. Solvent-based paints, and the automotive painting operations process by which they are applied to vehicles, emit substantial quantities of volatile organic compounds ("VOCs").

30. The VOCs emitted during Defendant's automotive painting operations consist of hydrocarbons, ketones, esters, alcohols, and glycol ethers.

31. The Transit Line was introduced at the Plant beginning in 2014.

32. The Transit Line is painted using a wet-on-wet process, meaning that the topcoat of paint is applied directly on top of a wet guidecoat without any intervening oven curing; the Transit Line is therefore conveyed through multiple, consecutive spray booths without any intervening oven.

33. The Transit Line is cured in a Wet System Oven.

34. The F-150 Line is painted utilizing an older method than the Transit Line that requires higher quantities paint and more coat applications.

35. The F-150 Line receives an anti-chip coating and a guidecoat ("guidecoat") in a downdraft guidecoat spray booth; then the guidecoat is cured in a guidecoat oven.

4

36. After the guidecoat is cured, the F-150 Line receives one or two basecoats and a clearcoat ("topcoat") in a downdraft topcoat spray booth; then the topcoats are cured in a topcoat oven.

37. After the topcoat is cured, the F-150 Line is conveyed into a downdraft tutone spray booth, where each vehicle receives one or two additional basecoats and a clearcoat; then the additional topcoats are cured in a tutone oven.

*Defendant's Noxious Fumes and Emissions*

38. There are two general emission control techniques for reducing VOC emissions from automobile assembly paint coatings: (1) pollution prevention measures, and (2) emission capture and add-on control systems.

39. According to its permit, Defendant relies upon on at least one regenerative thermal oxidizer ("RTO") as its control system for VOC emissions from all of its downdraft spray booths and curing ovens.

40. Solvent-based paints contain and emit substantially more VOCs than other available forms of paint, such as water-based paints, that are commonly used in the automotive industry.

41. Defendant's emissions from solvent-based painting operations are noxious and highly odiferous.

42. Defendant has failed to take adequate pollution prevention measures and install, operate, and maintain adequate emission capture and add-on control systems in its Paint Shop.

43. Defendant has acknowledged on multiple occasions that the Plant, specifically the Paint Shop, is the source of the odors invading Plaintiff's property.

44. Defendant has represented to the Missouri Department of Natural Resources

5

("MDNR"), and local residents calling in with concerns about the odors, that bacterial growth in its emission stacks and its Truck Paint Sludge Pit have been the sources of certain noxious odors emitted from Defendant's property in the past.

45. The odors caused by the Plant and the Paint Shop have been and continue to be dispersed across all public and private land in the class area.

46. A properly designed, constructed, operated, managed, and maintained automotive manufacturing Plant and Paint Shop will take adequate pollution prevention measures and collect, capture and destroy noxious gases, fumes, and chemicals from its manufacturing process, including an industrial automotive body paint operation, in order to minimize emissions and prevent the noxious chemical fumes and odors from escaping into the ambient air as fugitive emissions.

47. Defendant is required to control its odorous emissions by, among other things, operating and maintaining an automotive assembly and painting process that adequately limits and controls noxious emissions; taking adequate pollution prevention measures; adequately designing, operating, and maintaining its exhaust emission stacks; adequately capturing, containing, filtering, and processing the emissions from its Paint Shop's spray booths and curing ovens to avoid unreasonable noxious emissions; maintaining and operating adequate VOC emission processing systems to contain, capture, dilute, adsorb, and oxidize VOC emissions from its spray painting process and post-spray curing processes; adequately operating and maintaining emission capture and add-on control systems with sufficient capacity to prevent noxious emissions from entering into the ambient air; operating and maintaining adequate systems for processing wastewater and paint sludge; and other reasonable odor mitigation, elimination, and control systems available to Defendant.

48. Defendant has failed to install, maintain, operate, develop, and/or implement adequate odor mitigating strategies, processes, technology, and equipment to adequately control its odorous emissions from the Plant and/or the Paint Shop and prevent those odors and emissions from invading the homes and properties of Plaintiff and the putative Class.

49. Defendant's failures to prevent noxious off-site fumes and odors included, but are not limited to: implementing reasonable pollution control measures; operating and maintaining adequate emission capture and/or add-on control systems to match its high-volume industrial painting process; operating and maintaining adequate systems for processing wastewater and paint sludge; adequately designing, operating, and maintaining its exhaust emission stacks; utilizing other odor prevention, elimination, and mitigation measures available to Defendant; and other failures revealed during discovery.

***Impacts of Defendant's Actions and Omissions on Plaintiff and the Putative Class***

50. The Plant and its odorous emissions have been the subject of frequent complaints from residents in the nearby residential area.

51. More than 50 households have contacted Plaintiff's counsel documenting the odors they attribute to the Defendant's Plant.

52. Plaintiff Thornburg reported that he experiences "strong paint fumes (lacker) and other bad odors."

53. Plaintiff further reported that, because of the noxious odors, "I have to close windows and turn on AC. Can not be outside to do yard work or grill food without feeling the effect of burning and dry eyes and respiratory problems."

54. Below is a small sampling of the factual allegations made by putative class members to Plaintiff's counsel, demonstrating that the Plant is the source and cause of the odor

7

emissions, which have caused damages to neighboring properties.

    a.    On June 26, 2019, putative class member Cynthia Clausen from Kansas City, Missouri reported that her household suffers from a "chemical odor – when you open your door you immediately smell it." Further, she stated that she cannot "sit out on front porch very long."

    b.    Putative class member Nancy Prichard from Pleasant Valley, Missouri describes "2 terrible odors – one is like a smell of paint thinner. The other is a very strong moldy smell."

    c.    Putative class member Emily Conn from Pleasant Valley, Missouri reported that "a strong paint type smell can often be smelled outside our home. It smells like an open paint can is under my nose." She further reported that "I do not like to be outside when I can smell this odor. It makes nervous about my family's health."

    d.    Putative class member Melissa Crispin from Pleasant Valley, Missouri reported that "I smell alot of paint fumes at my house from the Ford plant they really noxious." She further stated that "[w]hen the fumes are strong I can't go outside or open my windows at time it could make you nausea and a little high and have headaches."

    e.    Putative class members Collin and Autumn Dahlbeg from Pleasant Valley, Missouri reported that they suffer from an "[a]lmost paint-like" odor. They describe a "very strong chemical smell. So obnoxious we stayed indoors sometimes. We want to move. We can't go outside and swim sometimes. Playing baseball or basketball with kids less frequent!"

    f.    Putative class member Malinda Gardner from Kansas City, Missouri reported a smell that reminds her "of paint and [rotten] bananas [] mixed together." She stated that "[w]e stay inside most of the time due to the smell. Can't even open our windows. The smell gives me headaches & makes me nauseous."

    g.    Putative class members Danny and Cynthia Kinslow from Kansas City, Missouri experience an odor they describe as "burnt rubber and burnt plastic." As a result, Danny experiences headaches, and Cynthia experiences nausea and stomach pain.

    h.    Putative class member Debra Lambert from Pleasant Valley, Missouri reported that the "smell is present 3-4 days a week" and it is "hard to enjoy being outside when odor is present. Get headaches if have to smell for very long."

    i.    Putative class member Janet Leone from Kansas City, Missouri reported

that the odor is difficult to describe. She stated that "it is just a horrible smell and very annoying. The smell could be a chemical." Further, she reported that, "some days the smell is very strong and I can't enjoy my patio. I have also smell this in my garage."

55. Defendant's well documented pattern of failing to control its emissions is further demonstrated by the following:

   a. Numerous and repeated resident complaints to the Missouri Department of Natural Resources ("MDNR") directly attributing noxious odors to Defendant's Plant, including 41 separate complaints logged between September 16, 2018 and December 15, 2018 alone. A small sampling of these resident complaints include the following factual allegations, which Plaintiff incorporates by reference herein:

      i. On August 27, 2018, David Fulkerson from Liberty, Missouri reported that "there is a strong toxic industrial smell that covers Liberty at certain times of the year. This time seems to be stronger than most. The smell is outside as well as indoors. It is chemical and is causing headaches, itchy eyes, difficulty breathing. It's like driving into a wall of chemical haze when entering the city and stretches beyond the municipal borders as far south as North Kansas City." During the MDNR's follow up on this complaint, Defendant's Environmental Manager acknowledged on September 20, 2018 to the MDNR that the Plant was the cause of the odor, attributing it to "bacterial growth in one of [Defendant's] stacks…"

      ii. On November 21, 2017, an anonymous caller reported the following to the MDNR: "there is a chemical odor at time like melting plastic sometimes like and sometimes both emanating from the Ford Plant in Claycomo near the Gracemor Christian Church and that at [NE 56th Street and NE San Rafael Drive, Kansas City, MO] there may be a smell for a week, then it will stop, and then randomly for a few days. She talked to someone at the plant that stated the odor is much worse in the plant but perhaps may call back with a better assessment of dates when the production (or process that produces the odor) will occur. Alleged that when dog walking in the area, a mask has to be worn because the odor is that bad."

      iii. On November 11, 2017, Mark Dawdy from Kansas City, Missouri reported as follows to the MDNR: "Heavy strong paint smell, I assume this is coming from the Ford factory. I live in the 64158 area code and can still smell it."

9

iv. On April 30, 2018, an email from an unknown sender was sent from the EPA to the MDNR that stated: "Since we had purchased our house five years ago there has become a strong paint and chemical smell in the air that is present in the middle of Gracemor neighborhood that is far enough away that we shouldn't be smelling this. It seems to be a daily basis now that the chemical and paint smell is so strong that myself and several neighbors are no longer able to sit outside in our backyard's due to the chemical smell in the air. It has become so strong that our neighbor has had an asthmatic attack related to the smells. It hurts your nose and it becomes hard to breathe when you inhale the fumes. It smells so strong that we at first thought it was a neighbor that was painting, but it was actually coming from the plant." The MDNR conducted no investigation based on this complaint until September 18, 2018.

v. On October 24, 2018, Elizabeth Payton from Kansas City, Missouri sent an email to the MDNR, which stated: "The Ford Plant in Gracemor is making the Gracemor area smell like some kind of paint chemical mixture. I live by the Gracemor Christian Church at 5600 NE San Rafael Dr., Kansas City, MI 64119."

vi. On October 31, 2018, Becky Goltz from Pleasant Valley, Missouri reported to the MDNR that she called Defendant, who informed her that the odor was being caused by their "paint truck sludge pit." Goltz further reported that, "This odor can become so obtrusive at times that it literally takes your breath away when encountered! Again, just this past Monday evening 10/29 @ about 9 pm, I was forced to close my windows in my home in Pleasant Valley due to the odor becoming so strong. This odor travels for MILES away from the plant, in all directions, at different times on different days. It will literally force my family indoors due to the strong, obtrusive odor."

b. Numerous media reports regarding Defendant's "overwhelming" noxious odors and emissions.

c. After recognizing that the Plant was the source of the noxious emissions, Defendant hired an outside consultant to investigate the source and cause of the odors.

56. Defendant's Plant has emitted, and continues to emit, objectionable odors that are detectable outside the bounds of its property.

10

57. The Plant has emitted objectionable odors that have caused negative impacts to its neighbors.

58. Plaintiff and members of the putative class suffer from physical discomfort because of Defendant's noxious odors, including but not limited to nausea, headaches, breathing problems, eye irrigation, sinus irritation, dizziness, and stomach pain.

59. The foul odors emitted from the Plant are offensive, would be offensive to a reasonable person of ordinary health and sensibilities, and have caused property damage, including by interfering with the ability of Plaintiff and the Class to use and enjoy their homes and property.

60. The Class Area is home to a wide range of commercial and recreational activities, including but not limited to manufacturing, retail trade, health care & social assistance, education, amusement, dining, and lodging.

61. Plaintiff and the Class are a limited subset of individuals in Clay County, and the Class Area, that includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition. *See*, infra, at ¶ 64.

62. Members the public, including but not limited to businesses, employees, commuters, tourists, visitors, minors, customers, clients, students, and patients, have experienced and been harmed by the fugitive noxious odors emitted from the Plant into public spaces; however, unlike Plaintiff and the Class, members of the public who are outside of the Class Definition have not suffered damages of the same kind, in the form of diminished property values and/or loss of use and enjoyment of their private property.

63. The invasion of Plaintiff's property and that of the Class by noxious odors has reduced the value of that property and has interfered with the use and enjoyment of that property,

resulting in damages in excess of $5,000,000.00.

64. Defendant negligently, knowingly, intentionally, recklessly, willfully, and grossly failed to properly operate, design, repair, and/or maintain operate the Plant and its associated operations, thereby causing the invasion of Plaintiff's property by noxious odors on frequent, intermittent and ongoing reoccurring occasions.

## **CLASS ALLEGATIONS**

### A. Definition of the Class

65. Plaintiff brings this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks to represent a Class of persons preliminarily defined as:

> **All owner/occupants and renters of residential property residing within two (2) miles of the Plant's property boundary.**

The definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class ("Class Members"). Plaintiff reserves the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

66. This case is properly maintainable as a class action pursuant to and in accordance with Rule 23(a) of the Federal Rules of Civil Procedure in that:

    a. The Class, which includes thousands of members, is so numerous that joinder of all members is impracticable;

    b. There are substantial questions of law and fact common to the Class including those set forth in greater particularity herein;

    c. Questions of law and fact such as those enumerated below, which are all common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

    d. The claims of the representative parties are typical of the claims of the Class;

      e.      A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

      f.      The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

      g.      There are no unusual difficulties foreseen in the management of this class action; and

      h.      Plaintiff, whose claims are typical of those of the Class, through her experienced counsel, will zealously and adequately represent the Class.

### B. Numerosity

67. The approximate number of residential households within the Class Area is over 6,000.

68. The Class consists of thousands of members and therefore is so numerous that joinder is impracticable.

### C. Commonality

69. Numerous common questions of law and fact predominate over any individual questions affecting Class Members, including, but not limited to the following:

      a.      whether and how Defendant negligently, intentionally, recklessly, and grossly failed to design, operate, and maintain the Plant and its operations;

      b.      whether Defendant owed any duties to Plaintiff;

      c.      which duties Defendant owed to Plaintiff;

      d.      which steps Defendant has and has not taken in order to control the emission of noxious odors through the design, operation, and maintenance of its automotive plant and paint shop and their respective operations;

      e.      whether Defendant met its standard of care with respect to its operation, design, and maintenance of the Plant and its operations;

      f.      whether and to what extent the Plant's noxious odors were dispersed over the Class Area;

      g.      whether it was reasonably foreseeable that Defendant's failure to properly

13

design, operate, and maintain the Plant and its operations would result in an invasion of Plaintiff's property interests;

h. whether the degree of harm suffered by Plaintiff and the Class constitutes a substantial annoyance or interference; and

i. the proper measure of damages incurred by Plaintiff and the Class.

### D. Typicality

70. Plaintiff has the same interests in this matter as all the other members of the Class and his claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

71. The claims of Plaintiff and the other Class Members have a common cause and their damages are of the same type. The claims originate from the same failure of the Defendant to properly design, operate, and maintain the Plant and its operations.

72. All Class Members have suffered injury in fact as a result of the invasion of their property by Defendant's release of noxious odors, causing damage to their property.

### E. Adequacy of Representation

73. Plaintiff's claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class' claims will be prosecuted with diligence and care by Plaintiff as representative of the Class. Plaintiff will fairly and adequately represent the interests of the Class and does not have interests adverse to the Class.

74. Plaintiff has retained the services of counsel who are experienced in complex class action litigation and in particular class actions stemming from invasions of noxious industrial emissions. Plaintiff's counsel will vigorously prosecute this action and will otherwise

14

protect and fairly and adequately represent Plaintiff and all absent Class Members.

**F. Class Treatment Is the Superior Method of Adjudication**

75. A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

   a. Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

   b. Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

   c. The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

   d. The proposed class action is manageable.

76. The prosecution of separate actions by or against individual members of the Class would create the risk of (i) inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for the party opposing the Class; and (ii) adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

77. Notice can be provided to members of the Class by U.S. Mail and/or publication.

### I. CAUSE OF ACTION ONE

### NUISANCE

78. Plaintiff restates the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

79. Plaintiff utilized his property as a residence.

80. The noxious odors which entered Plaintiff's property originated from Defendant's Plant, which was in close proximity.

81. By failing to reasonably design, operate, repair, and maintain its Plant, Defendant has caused an invasion of Plaintiff's property by noxious chemical fumes and odors.

82. Such an invasion of Plaintiff's property by noxious chemical fumes and odors resulted from an unreasonable, unusual, and/or unnatural use of Defendant's property.

83. The noxious fumes and odors invading Plaintiff's property are indecent and offensive to Plaintiff, and indecent and offensive to individuals with ordinary sensibilities and obstruct the free use of Plaintiff's property so as to substantially and unreasonably interfere with the comfortable enjoyment of life and property.

84. Defendant knew that it was emitting noxious fumes and odors onto neighboring properties, yet failed to take reasonable steps to abate the nuisance.

85. Defendant owed and continue to owe a duty to the public to prevent and abate the interference with, and the invasion of, the free use and enjoyment of public spaces.

86. Defendant owed and continue to owe a duty to Plaintiff and the Class to prevent and abate the interference with, and the invasion of, their private interests.

87. As a foreseeable, direct and proximate result of the foregoing conduct of Defendant, Plaintiff suffered damages to his property as alleged herein.

88. By causing noxious fumes and odors that physically invaded Plaintiff's property, Defendant created a nuisance which substantially and unreasonably impaired Plaintiff's use and enjoyment of his property. Such substantial and unreasonable interference includes, but is not limited to:

16

a. loss of use and ability to enjoy the outside areas of Plaintiff's property or to open windows due to the presence of noxious odors;

b. decrease in the value of Plaintiff's property; and

c. annoyance, inconvenience, and physical discomfort, including but not limited to, being woken up in the middle of the night by noxious odors, the physical discomfort and accompanying symptoms of enduring noxious odors, and the inability to invite guests to Plaintiff's residence due to the embarrassment and annoyance of the noxious odors invade Plaintiff's property.

89. Apart from the property damage incurred by Plaintiff and the Class, Defendant's emissions have substantially interfered with rights common to the general public, including the right to uncontaminated and/or unpolluted air.

90. Plaintiff suffered and continues to suffer special harm relating to the use and enjoyment of their land and property, and decreased property values—damages of a different kind that are additional to those suffered by the public at-large.

91. Plaintiff did not consent to noxious odors entering upon his property.

92. Whatever social utility provided by the Plant is clearly outweighed by the harm suffered by Plaintiff and the putative class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have been forced to endure substantial loss in the value of their properties.

93. Defendant's substantial and unreasonable interference with Plaintiff's property rights constitutes a nuisance for which Defendant is liable to Plaintiff for all damages arising from such nuisance, including compensatory, exemplary and/or punitive relief.

## II. CAUSE OF ACTION TWO

### NEGLIGENCE AND GROSS NEGLIGENCE

94. Plaintiff restates the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

95. On occasions too numerous to mention, Defendant negligently and improperly designed, operated, repair, and/or maintained its Plant and its operations, causing fugitive emissions to escape into the ambient air and invade Plaintiff's home, land, and property.

96. Defendant owed Plaintiff, as a neighboring landowner, a duty of care with regard to its operation and maintenance of the Plant.

97. As a direct, proximate, and foreseeable result of Defendant's negligence and gross negligence in operating and maintaining the Plant, Plaintiff's property, on occasions too numerous to mention, was physically invaded by noxious odors.

98. As a further direct, proximate, and foreseeable result of the foregoing conduct of Defendant, Plaintiff suffered damages to her property as alleged herein. Such damages include, but are not limited to, the loss of use and enjoyment of Plaintiff's property and diminution in the value of Plaintiff's property.

99. By failing to properly operate and/or maintain its Plant, Defendant failed to exercise its duty of ordinary care and diligence so that noxious odors would not invade Plaintiff's property.

100. By failing to maintain and operate its Plant, Defendant has caused the invasion of Plaintiff's property by noxious odors.

101. Defendant knowingly breached its duty to exercise ordinary care and diligence when it improperly maintained and/or operated its Plant and knew or should have known upon reasonable inspection that such actions would cause Plaintiff's property to be invaded by noxious odors. As a direct and proximate result of the failure of Defendant to exercise ordinary care, Plaintiff's residence has been and continues to be physically invaded by noxious odors.

102. After learning about its noxious emissions, Defendant failed to take reasonable

steps to abate the conditions causing damages to Plaintiff's property.

103. Defendant's conduct in knowingly allowing conditions to exist, which caused noxious odors to physically invade Plaintiff's property, constitutes gross negligence as it demonstrates a conscious disregard for Plaintiff's rights and safety.

104. There was a great probability that substantial harm would result from Defendant's acts and omissions in operating and maintaining the Plant.

105. Defendant's gross negligence was willful and made with a conscious disregard for the rights and safety of Plaintiff, which entitles Plaintiff to an award of compensatory, exemplary, and punitive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for judgment as follows:

A. Certification of the proposed Class pursuant to Federal Rule of Civil Procedure 23;

B. Designation of Plaintiff as representative of the proposed Class and designation of his counsel as Class Counsel;

C. Judgment in favor of Plaintiff and the Class Members and against Defendant;

D. An award, to Plaintiff and the Class, of compensatory and punitive damages and attorneys' fees and costs, including pre-judgment and post-judgment interest thereupon;

E. An Order holding that entrance of the aforementioned noxious odors upon Plaintiff's property constituted a nuisance;

F. An award to Plaintiff and the Class Members of injunctive relief not inconsistent with Defendant's state and federal regulatory obligations; and

G. Such further relief both general and specific as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demand a trial by jury.

Dated: November __, 2019            Respectfully submitted,


*s/ Terry A. Neff*

Terry Neff (44907)
Neff & Day, P.C.
117 W. Spring Street
Neosho, MO 64850
Tel: (417) 451-7003 | Fax: (417) 451-7048
tneff@neosholawyers.com

Steven D. Liddle*
Laura Sheets*
Matthew Z. Robb*
*Pro Hac Vice Motions to be Submitted*
**LIDDLE & DUBIN PC**
975 E. Jefferson Avenue
Detroit, Michigan 48207-3101
Tel: (313) 392-0015/Fax: (313) (313) 392-0025
sliddle@ldclassaction.com
lsheets@ldclassaction.com
mrobb@ldclassaction.com

*Attorneys for Plaintiff and the putative Class*