IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| OTTO E. THORNBURG, on behalf of himself and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) No. 4:19-cv-1025-NKL<br>)<br>) |
| v. | )<br>) |
| FORD MOTOR COMPANY, | )<br>) |
| Defendant. | ) |

**SUGGESTIONS IN SUPPORT OF DEFENDANT FORD MOTOR COMPANY'S
MOTION TO EXCLUDE PLAINTIFF'S EXPERT MARK CAL**

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ...................................................................................................1

**LEGAL STANDARD** ................................................................................................................2

**OPINIONS OF MARK CAL** ....................................................................................................3

**ARGUMENT** ..............................................................................................................................4

    I.    Dr. Cal's failure to provide any actual analysis warrants exclusion of his opinions. ...........................................................................................................4

    II.    Dr. Cal's opinion on the facility is not based on any evidence. ..............................7

    III.    Dr. Cal's opinions are neither helpful nor a fit for this case. ..................................7

        A.  Dr. Cal does not purport to provide any classwide evidence that will apply uniformly to the class. ................................................8

        B.  Dr. Cal's proposed model will require individual inquiries ...........................10

        C.  Dr. Cal only partially measures injury and causation. ......................................11

        D.  Dr. Cal's opinions are directly contradicted by the record. ..............................11

**CONCLUSION** .........................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ..................................................................................................2, 10

*Brooks v. Darling Int'l, Inc.*,
    2017 WL 1198542 (E.D. Cal. Mar. 31, 2017) ..............................................................6

*Comcast v. Behrend*,
    569 U.S. 27 (2013) .........................................................................................................2

*In re ConAgra Foods, Inc.*,
    302 F.R.D. 537 (C.D. Cal. 2014) ..................................................................................4

*Cruson v. Jackson Nat'l Life Ins. Co.*,
    954 F.3d 240 (5th Cir. 2020) ........................................................................................4

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ...................................................................................................2, 7

*In re Dicamba Herbicides Litig.*,
    2019 WL 6340260 (E.D. Mo. Nov. 27, 2019) ...........................................................5, 7

*Dickens v. Oxy Vinyls, LP*
    631 F. Supp. 2d 859, 865-66 (W.D. Ky. 2009) ..........................................................5, 7

*Ebert v. Gen. Mills, Inc.*,
    823 F.3d 472 (8th Cir. 2016) ........................................................................................3

*Hamilton v. 3D Idapro Solutions, LLC*,
    2019 WL 9089916 (W.D. Wis. Aug. 1, 2019) ..............................................................6

*In re Hardieplank Fiber Cement Siding Litig.*,
    2018 WL 262826 (D. Minn. Jan. 2, 2018) ............................................................2, 5, 8

*Henke v. Arco Midcon, L.L.C.*,
    2014 WL 982777 (E.D. Mo. Mar. 12, 2014) ..............................................................5, 9

*Hoekman v. Educ. Minnesota*,
    335 F.R.D. 219 (D. Minn. 2020) ...................................................................................5

*Littler v. Ohio Ass'n Pub. Sch. Employees*,
    2020 WL 1861646 (S.D. Ohio Apr. 14, 2020) .............................................................4

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Loomis v. Wing Enters., Inc.*,
 2013 WL 237479 (W.D. Mo. Jan. 22, 2013) (Laughrey, J.) ................................................. 2, 7

*Morr v. Plains All Am. Pipeline, L.P.*,
 2021 WL 4478660 (S.D. Ill. Sept. 30, 2021) ....................................................................... 5, 9

*Owens v. ContiGroup Cos.*,
 344 S.W.3d 717 (Mo. Ct. App. 2011) .................................................................................. 11

*Pedroza v. PetSmart, Inc.*,
 2013 WL 1490667 (C.D. Cal. Jan. 28, 2013) ......................................................................... 4

*Postawko v. Mo. Dep't Corrections*,
 910 F.3d 1030 (8th Cir. 2018) ................................................................................................ 2

*Radcliff v. Tate & Lyle Sucralose, Inc.*
 2008 WL 5071900, at *4 (S.D. Ala. Nov. 25, 2008) ........................................................... 6, 7

*Sofka v. Thal*,
 662 S.W.2d 502 (Mo. 1983) ................................................................................................. 11

*Wagner v. Hesston Corp.*,
 450 F.3d 756 (8th Cir. 2006) ............................................................................................... 2, 3

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ............................................................................................................ 2, 9

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
 644 F.3d 604 (8th Cir. 2011) .................................................................................................. 2

**Other Authorities**

10 CSR 10-6.165 .......................................................................................................................... 11

Rule 23 .................................................................................................................................. p*assim*

# PRELIMINARY STATEMENT

In support of class certification, Plaintiff offers the opinion of Dr. Mark Cal, who promises that he can determine which properties within Plaintiff's proposed class area have suffered "nuisance odors" or "odor threshold exceedences" if the Court certifies a class. Dr. Cal's opinions should be excluded for two reasons.

***First,*** Dr. Cal hasn't actually done any real work—he simply says that there is a way to provide what Plaintiff needs to meet Rule 23's strict requirements. Courts regularly exclude experts at the class stage where they have done little to no work—offering mere promises that future work can satisfy the required class-wide determinations. That is exactly what Dr. Cal does here. That alone warrants exclusion of the opinions in his report.

***Second,*** Dr. Cal's opinions will not be helpful to the Court and are not a fit for determining whether Plaintiff can satisfy Rule 23's commonality and predominance requirements. Dr. Cal has not actually opined that "nuisance odors" impact the proposed two-mile radius class area uniformly as Plaintiff states in his brief. Instead, Dr. Cal only opines that his model might show which, if any, properties may have been impacted. This concedes that mini-trials will have to occur regarding where these alleged "nuisance odors" exists. Moreover, Dr. Cal's model would as described only partially measure liability and damages. By only addressing the presence of "nuisance odors," it would not quantify whether any inconvenience were "substantial" or merely slight.

Thus, his opinions are not helpful and are not a fit for this case for commonality or predominance because he hasn't opined that he could show uniform impact throughout the class area.

For these two reasons, Dr. Cal's opinions should be excluded.

## LEGAL STANDARD

Testimony based on scientific, technical, or other specialized knowledge is admissible only if: (1) it is based upon sufficient facts or data; (2) it is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993). The expert's proffered opinions must also "fit" the particular facts of the case. *Loomis v. Wing Enters., Inc.*, 2013 WL 237479, at *3 (W.D. Mo. Jan. 22, 2013) (Laughrey, J.).

"Under the framework developed in *Daubert*, trial courts must serve as 'gatekeepers' to 'insure that proffered expert testimony is both relevant and reliable.'" *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006) (quoting *Anderson v. Raymond Corp.*, 340 F.3d 520, 523 (8th Cir. 2003)). At the class certification stage in the Eighth Circuit, courts apply a "tailored" *Daubert* analysis. *See in re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011). This requires a "focused" analysis that scrutinizes the reliability of the expert testimony in light of the criteria for class certification. *In re Hardieplank Fiber Cement Siding Litig.*, 2018 WL 262826, at *8 (D. Minn. Jan. 2, 2018).

Certification under Rule 23 "is proper only if, after a rigorous analysis, the trial court is satisfied that all of the Rule 23 prerequisites have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011). To satisfy Rule 23(a)'s commonality requirement, a plaintiff must raise common questions that "generate common answers apt to drive the resolution of the litigation." *Id.* at 350. Rule 23(b)'s predominance requirement is "far more demanding." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). While a plaintiff must "be prepared" to present evidence for Rule 23(a) criteria, "the party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast v. Behrend*, 569 U.S. 27, 33 (2013) *see also Postawko v. Mo. Dep't Corrections*, 910 F.3d 1030, 1035 (8th Cir. 2018) (quoting *Comcast*, 569 U.S. at 33).

Predominance requires a showing that those supposedly-common questions predominate over individual ones such that liability can be proven by common evidence for the entire class. *See Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 479 (8th Cir. 2016). In environmental contamination suits, if liability must be determined property-by-property, a plaintiff cannot satisfy predominance. *See id.* (holding that property-by-property analysis required to resolve liability in vapor contamination case).

The party offering an expert's testimony bears the burden of proving its reliability. *Wagner*, 450 F.3d at 758.

### OPINIONS OF MARK CAL

Plaintiff offers Dr. Mark Cal as an expert who can utilize AERMOD modeling to make class-wide determinations of alleged odor spread throughout the class area. Dr. Cal opines that dispersion of "odorous compounds" from the Ford facility "can be modeled." (Doc. 56-9 at 3 ¶ 5.)[1] He opines that a "detailed atmospheric dispersion modeling analysis . . . can determine the frequency, intensity and location of nuisance odors within the class area. This would allow for a determination of which residential properties within the class area are impacted by Ford Claycomo's emissions and to what extent." (*Id.* ¶ 6) He offers no specific analysis under any model.

Plaintiff cites to Dr. Cal's opinions in support of commonality and predominance. For commonality, Plaintiff posits that Dr. Cal "will provide objective data from which the Court and factfinder can determine that the Defendant's emissions were dispersed throughout the class area . . . during the merits phase of the litigation." (Doc. 56 at 14.) For predominance, Plaintiff asserts that Dr. Cal "establish[es] that objective and scientific methods can determine . . . the extent and

---

[1] For ease of reference, Ford cites to the ECF pagination in the footer of Dr. Cal's report.

-3-

Case 4:19-cv-01025-NKL   Document 65   Filed 02/09/22   Page 7 of 18

severity of Defendant's noxious odor emissions across the class area." (Doc. 56 at 23.)

## ARGUMENT[2]

### I. Dr. Cal's failure to provide any actual analysis warrants exclusion of his opinions.

To satisfy Rule 23's strict requirements, Plaintiff must provide classwide evidence of injury, causation, standing, and damages. Dr. Cal's report purports to provide classwide evidence for injury and causation.

At bottom, Dr. Cal promises that if the Court certifies a class, he can perform work. Specifically, he could identify within the proposed class area which, if any, properties were impacted by "nuisance odors." (Doc. 56-9 at 3 ¶ 5.) Yet he concedes that he has not actually performed any analysis. (*See id.*) This is insufficient.

Courts across the country regularly exclude experts at the class certification stage where there is merely a "promise[]" that they can perform a future analysis. *Pedroza v. PetSmart, Inc.*, 2013 WL 1490667, at *3-4 (C.D. Cal. Jan. 28, 2013) (excluding expert opinion at class certification stage where expert merely "promise[d]" that he would be able to complete survey that would support commonality); *see, e.g., Littler v. Ohio Ass'n Pub. Sch. Employees*, 2020 WL 1861646, at *7 (S.D. Ohio Apr. 14, 2020) (excluding in part expert opinion at class certification stage where analysis of "limited" data set resulted in opinion that was "pure speculation"); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 552 (C.D. Cal. 2014) (excluding expert at class certification stage because all court had was expert's "assurance that he can build a model to calculate damages"); *see also Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 258 (5th Cir. 2020) (reversing class certification where damages expert "offered barely a 'preliminary overview'" of

---

[2] Ford is not at this point challenging the use of AERMOD as a general matter—only Dr. Cal's failure to actually use it. Ford reserves its right to fully challenge the opinions of Plaintiff's experts if and when they actually supply their data, inputs, and apply their their methodologies, including how Dr. Cal may in the future use AERMOD.

-4-

damages calculations).

Courts in the Eighth Circuit are no different. For example, the District of Minnesota excluded an expert who opined on hardieplank characteristics, yet never did any actual testing on those characteristics. *See In re Hardieplank*, 2018 WL 262826, at \*9; *see also, e.g. In re Dicamba Herbicides Litig.*, 2019 WL 6340260, at \*8-9 (E.D. Mo. Nov. 27, 2019) (excluding expert at class certification stage where he attempted to opine on contamination in soy bean fields that he never visited); *see also Henke v. Arco Midcon, L.L.C.*, 2014 WL 982777, at \*10 (E.D. Mo. Mar. 12, 2014) (denying class certification where plaintiff's expert "performed no statistical analysis—offering only speculation"). Courts also exclude experts where they simply opine that their models or opinions could be could be done "using standard techniques." *Hoekman v. Educ. Minnesota*, 335 F.R.D. 219, 240 (D. Minn. 2020); *see also, e.g.*, *Morr v. Plains All Am. Pipeline, L.P.*, 2021 WL 4478660, at \*5 (S.D. Ill. Sept. 30, 2021) (excluding mass appraisal expert at class certification stage where expert simply opined that he could determine "impact on the value of the [class] properties" by "utilizing a standard mass appraisal (regression model)").

Courts similarly reject contaminant modeling experts who fail to do the leg work required to perform an analysis, just as Dr. Cal does here. For example, in *Dickens v. Oxy Vinyls, LP*, the Western District of Kentucky rejected proffered expert testimony on odor emissions where the expert had taken "very few samples," "did not examine the full test results," and merely "relied on individual questionnaires and government documents." 631 F. Supp. 2d 859, 865-66 (W.D. Ky. 2009).

Tellingly, that is more than Dr. Cal has done. He has admittedly not taken *any* samples. (*See* Doc. 56-9 at 11 (listing references).) He does not have "full test results" to even examine.

-5-

Case 4:19-cv-01025-NKL   Document 65   Filed 02/09/22   Page 9 of 18

(*See id.*)  And just like *Dickens*, Dr. Cal relies on "individual questionnaires and government documents" to claim that he can do what Plaintiffs need him to do.  (*See id.*)

Similarly, in *Radcliff v. Tate & Lyle Sucralose, Inc.*, the Southern District of Alabama excluded expert testimony in an environmental contamination case where the expert had failed to even test for the presence of contaminants at plaintiffs' properties.  *See* 2008 WL 5071900, at *4 (S.D. Ala. Nov. 25, 2008).  As the court explained, the expert's "opinion boils down to asserting that, because the plaintiffs are complaining about problems that could be attributed to chemicals that are present at [defendant]'s plant, [defendant] must be emitting those chemicals." *Id.*  Put differently, the expert's opinion was based on "plaintiffs' complaint of a nuisance and the fact that it is theoretically possible for the plant to emit" sufficient chemicals to cause a nuisance.  *Id.*

That is almost exactly what Dr. Cal has done here.  Like the excluded expert in *Radcliff*, Dr. Cal bases his opinion on resident reports that "have described nuisance odors using terms such as paint, varnish, acetone, chemical, and petroleum."  (Doc. 56-9 at 2 ¶ 2.)  He relies on Ford's air permit to opine that Ford is allowed to emit certain compounds which "are known to have significant odor intensities." (*Id.* ¶ 3.)  Dr. Cal admits, however, that Ford's emissions comported with the air permit and, in fact, were approximately 80 tons less than allowed in 2016.  (*Id.*)  In the end, Dr. Cal opines that because there is evidence of complaints and that it is "theoretically possible" for Ford to emit chemicals to cause a nuisance, he can establish that Ford is, in fact, doing so.  But failing to actually endeavor to do that falls short of *Daubert*'s requirements.[3]

Thus, Dr. Cal's opinions should be excluded.

---

[3] Plaintiff will likely note that the courts in *Hamilton v. 3D Idapro Solutions, LLC*, 2019 WL 9089916 (W.D. Wis. Aug. 1, 2019), and *Brooks v. Darling Int'l, Inc.*, 2017 WL 1198542 (E.D. Cal. Mar. 31, 2017), declined to exclude Plaintiff counsel's experts (including Dr. Cal) at the class certification stage.  It is true that these courts did not exclude the experts, but both of these courts denied class certification based in part on the failure of Plaintiff's experts to provide classwide evidence in those cases.  Those courts reached the same conclusion that Ford seeks, just through a different method.

-6-

Case 4:19-cv-01025-NKL   Document 65   Filed 02/09/22   Page 10 of 18

## II. Dr. Cal's opinion on the facility is not based on any evidence.

Apart from his promise to conduct modeling, Dr. Cal offers that "[d]ue to the excessive number of citizen complaints, the facility is not being appropriately managed to minimize odors leaving the facility boundary." (Doc. 56-9 at 2 ¶ 2.) But that opinion does not appear to come from having done any investigation whatsoever.

Instead, Dr. Cal appears to base his view of "excessive" complaints on the response rate from Plaintiff's counsel's solicitation of comments from mailing out data sheets. But a 1.4% response rate can hardly constitute "excessive." (*See* Doc. 56-5 ¶ 10 (noting that "mailer went out to 3,518 residences); Phillips Report ¶ 68, Ex. 1.) This is especially true where Ford has submitted declarations from more individuals saying that they never have experienced odor than Plaintiff has identified have. (*See* Opp'n Class Cert. Section I.C.1.) Moreover, he appears to base his opinion on the facility "not being appropriately managed" solely on the "excessive" complaints and the theoretical possibility that the plant may produce emissions that, at some level, may cause the complained-of experiences. This is not enough. *See Radcliff*, 2008 WL 5071900, at *4.

Moreover, the evidence in this case contradicts Dr. Cal's opinion. On many occasions, the Missouri Department of Natural Resources investigated allegations of odor emanating from the plant. Each investigation found that the plant complied with the Missouri Odor Rule, which is incorporated into the plant's air permit. (*See* Luebbering Decl. ¶ 8, Ex. 2; Dalton Report 23, Ex. 3.)

For these reasons, Dr. Cal's opinion should be excluded from the outset.

## III. Dr. Cal's opinions are neither helpful nor a fit for this case.

*Daubert* and its progeny also require that a proffered expert's opinion be helpful, *In re Dicamba Herbicides Litig.*, 2019 WL 6340260, at *7, and a "fit" for the particular facts of the case, *see Loomis*, 2013 WL 237479, at *3. At the class certification stage, these requirements must be

assessed in the context of the requirements for class certification. *In re Hardieplank Fiber Cement Siding Litig.*, 2018 WL 262826, at *8. Here, that helpfulness and fit analysis focuses on Rule 23(a)'s commonality requirement and Rule 23(b)(3)'s predominance requirement.

**A. Dr. Cal does not purport to provide any classwide evidence that will apply uniformly to the class.**

Plaintiff posits that Dr. Cal can show commonality by establishing the presence of nuisance odors "[t]hroughout the [e]ntire [p]roposed [c]lass [a]rea." (Doc. 56 at 6.) Plaintiff goes so far as to claim that "there is substantial evidence that the Class Area had been impacted by a common source air polluter and to a similar degree." (Doc. 56 at 3.)

But Dr. Cal's report does not go nearly as far as Plaintiff advertises. Dr. Cal posits that his model could "determine[e] . . . **which** residential properties within the class area are impacted by Ford Claycomo's emissions and **to what extent**." (Doc. 56-9 at 3 ¶ 6 (emphasis added).) So if the Court certifies the class area, Dr. Cal can thereafter determine which properties may have been affected by supposed "nuisance odors." (*See id.*)[4] But Dr. Cal does not opine that all residential properties have been impacted. He hedges by stating that he could determine "which residential properties" have been impacted and "to what extent." (*Id.*)

By definition, "which properties" and "to what extent" signal that there is the possibility that the answer is "none." Thus, Dr. Cal concedes that there will not be class-wide impact—and thus no class-wide evidence. Some properties may be impacted, some may not. The end result of Dr. Cal's work will necessarily require an individualized assessment, looking property-by-property in the future to determine whether Dr. Cal's model finds that each property has been affected, if at all. Thus, Dr. Cal's opinions do not and cannot provide common evidence to answer supposedly common questions apt to drive resolution of this litigation "in one stroke" as required

---

[4] Dr. Cal agrees with Ford's expert Dr. Dalton's definition of "odor threshold exceedences." *See* Section III.D.

-8-

Case 4:19-cv-01025-NKL    Document 65    Filed 02/09/22    Page 12 of 18

by *Dukes*. 564 U.S. at 350.

Plaintiff's claim that "there is substantial evidence that the Class Area had been impacted by a common source air polluter and to a similar degree," (Mot. ¶ 12), is unsupported by Dr. Cal's opinions for similar reasons. Though Plaintiff claims there to be a "common source air polluter," Dr. Cal's hedge on the "extent" of any impact shows that he is not even sure that there exists a "common source air polluter," only that there is the possibility of one. The same holds true for Plaintiff's claim of a "similar degree" of impact. Instead, Dr. Cal's opinions on the point appear to amount to mere speculation void of any independent investigative analysis at all. *See Morr*, 2021 WL 4478660, at *6 (excluding expert at class certification stage where expert failed to offer "analysis specific to th[e] case" related to his model); *see also Henke*, 2014 WL 982777, at *10 (denying class certification where plaintiff's expert "performed no statistical analysis—offering only speculation").

Moreover, Plaintiff's claims of a "common source" and "similar degree" are belied by the record. There exist other potential sources such as Crash Champions Collision Repair and any number of alternative odors identified in the Class Area. (*See* Ex. 3 at 8 & n.8.) There exist more individuals stating under oath that they have not been impacted at all than there are of anyone claiming—under oath or not—that they have been impacted. (*See* Opp'n Class Cert. Section I.C.1.)

Accordingly, Dr. Cal's own report demonstrates that he would not assist in determining commonality. He is not prepared to say that the entirety of the class area is uniformly impacted as Plaintiff asserts. Instead, he states the opposite.

### B. Dr. Cal's proposed model will require individual inquiries.

But even if Dr. Cal might theoretically assist with commonality,[5] he cannot with predominance—a "far more demanding" standard. *Amchem Prods., Inc.*, 521 U.S. at 624.

A significant focus of the litigation will be the presence of any "nuisance odors" at properties within the proposed class area. He admits that just because his model may project "nuisance odors" at one property, it does not mean that his model will project "nuisance odors" at any others—including a next door neighbor. (*See* Doc. 56-9 at 3 ¶ 6.) Even if his model did project "nuisance odors" at a property, testimony of the property owner herself may reveal that she has never experienced any "nuisance odors" attributable to Ford.

This is not an academic exercise. It is a real-world possibility. Presume that Dr. Cal's future model projects that "nuisance odors" were present at Plaintiff's property and his neighbor's property just next door. But his neighbor says that she "has not experienced any odor while living at [her] residence" in the last 46 years. (Kincheloe Decl. ¶¶ 3-4, Ex. 4.) And Plaintiff admits that he cannot speak to his neighbor's experience. (Thornburg Dep. 190:2-192:4 (discussing how he "does not know" neighbor's capability "of smelling anything" and that people experience odor differently), Ex. 5.)

Relying on Dr. Cal to find supposed "uniform impact" actually would not do anything other than create thousands of mini-trials, dooming predominance. Moreover, where one neighbor claims substantial interference but another does not, it reinforces that Dr. Cal's opinions will not obviate the need to conduct mini-trials. Instead, it confirms they will have to occur.

Thus, Dr. Cal will not assist with disposition of Rule 23(b)'s predominance requirement.

---

[5] For the reasons explained in Ford's Opposition to Plaintiff's Motion for Class Certification, his report does not support commonality either.

-10-

Case 4:19-cv-01025-NKL   Document 65   Filed 02/09/22   Page 14 of 18

### C. Dr. Cal only partially measures injury and causation.

Compounding the problem, Dr. Cal does not seek to fully answer any causation or injury question. Instead, the only question he looks to answer is whether odor has been "dispersed." (Doc. 56-9 at 9.) That question will not help determine liability or damages.

To recover for nuisance, Plaintiff must demonstrate "significant harm" to prevail on a nuisance claim. *Sofka v. Thal*, 662 S.W.2d 502, 508 (Mo. 1983). This is more than just "slight inconvenience or petty annoyance." *Id.* While Dr. Cal may opine that he can demonstrate that "nuisance odors" may be present on any property, that would only answer part of the question—not whether any "significant harm" has occurred, whether any alleged harm was more than "slight inconvenience or petty annoyance," or whether the alleged harm was even caused by the odors at issue.

Relatedly, Plaintiff seeks nuisance damages for "annoyance, inconvenience, and physical discomfort." (Compl. ¶ 88.) Although there is no bright-line test to measure these sorts of damages, *see Owens v. ContiGroup Cos.*, 344 S.W.3d 717, 722 (Mo. Ct. App. 2011), Dr. Cal's opinion cannot even help quantify them. As discussed, all he proposes that he can do is determine presence of odor on certain properties.

For these reasons, Dr. Cal is neither helpful nor a fit and should be excluded.

### D. Dr. Cal's opinions are directly contradicted by the record.

Dr. Cal posits that he could determine the presence of "nuisance odors" in the class area. He pegs the marker for what constitutes "nuisance odors" or "odor threshold exceedences" as odor levels "at or greater than 7 D/T." (Doc. 56-9 at ¶ 3.4 (stating that "communities often define nuisance odor levels" at this measure).) This is the same level as the Missouri Odor Rule, *see* 10 CSR 10-6.165, and is incorporated into KCAP's permit, (Ex. 3 at 3 & n.4; KCAP Air Permit, Ex. 6).

Unlike Dr. Cal, Ford's expert, Dr. Pam Dalton, has conducted actual work here. She performed an odor monitoring study over four weeks consisting of over 3,500 odor readings. (*See* Ex. 3 at 19.) And this odor study concluded that there were no odors detected that even approached the level of "nuisance odors" or "odor threshold exceedences" as defined by Dr. Cal. (*See id*.)

Not only that, but the Missouri Department of Natural Resources had previously investigated odor complaints about alleged odors coming from Ford. (Ex. 2 ¶ 9.) Despite this, Ford was never cited for violating the Missouri Odor Rule—which is incorporated into its air permit. (*See id.* ¶ 8.)

Thus, because the record squarely contradicts his promise of a study, his opinions should be excluded.

## CONCLUSION

For the reasons set forth above, the Court should exclude Dr. Cal's opinions.

Respectfully submitted,

/s/ R. Trent Taylor
Eugene E. Mathews, III  (VA Bar No. 36384)
R. Trent Taylor (VA Bar No. 47468)
McGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
Phone: (804) 775-1000
Fax: (804) 775-1061
mmathews@mcguirewoods.com
rtaylor@mcguirewoods.com

Jean Paul Bradshaw (MO# 31800)
Mara H. Cohara (MO# 51051)
Lathrop GPM LLP
2345 Grand Blvd., Suite 2200
Kansas City, MO  64108-2618
Phone: 816.292.2000
Fax:  816.292.2001
jeanpaul.bradshaw@lathropgpm.com
mara.cohara@lathropgpm.com

Sherry A. Rozell
McAfee & Taft, P.C.
Springfield, MO
4050 S. Fairview Ave
Springfield, MO 65807
918-574-3001
Fax: 918-574-3101
Email: sherry.rozell@mcafeetaft.com

***Attorneys for Ford Motor Company***

# CERTIFICATE OF SERVICE

       I hereby certify that on February 9, 2022, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will automatically send notification by electronic means of such filing to all counsel of record in this action pursuant to the Federal Rules of Civil Procedure and this Court's Local Rules.

<u>/s/ R. Trent Taylor</u>