**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| OTTO E. THORNBURG, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 4:19-cv-01025-NKL |
| v. | ) ) | |
| FORD MOTOR COMPANY, | ) ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Otto E. Thornburg alleges that Defendant Ford Motor Company has released noxious odors from its automotive facility onto his property and those of neighboring residents, interfering with their ability to use and enjoy their homes and adversely impacting property values, giving rise to claims of nuisance and negligence. He moves for certification of a class of plaintiffs consisting of "All owner/occupants and renters of residential property residing within two (2) miles of the Facility's property boundary." Ford moves to strike two preliminary expert reports that Plaintiff submits in support of the motion for class certification. For the reasons discussed below, the Court denies the motion for class certification, and denies Ford's motions to strike Plaintiff's preliminary expert reports as moot.

**I. BACKGROUND**

Ford operates a facility involving industrial assembly and body painting for certain automobiles on a 1,269-acre site in the Village of Claycomo in Clay County (the "Facility"). Adjacent to the main assembly plant, Defendant also operates and manages the Ford Kansas City Truck Paint facility. Plaintiff alleges that Defendant's painting and curing process involves the use of potent, industrial-strength solvent-based paints that, when applied to vehicles, produce a

high amount of Volatile Organic Compounds ("VOCs"), including hydrocarbons, ketones, esters, alcohols, and glycol ether. Plaintiff alleges that, unlike many other automakers and automotive painting operations, Defendant exclusively utilizes solvent-based paints, which contain and produce higher quantities of VOCs than other available paints, such as water-based paints. Plaintiff alleges that the Facility emits noxious odors onto neighboring residential properties.

The class proposed consists of all owners/occupants and renters of residential property residing within two miles of the Facility's property boundary, an area which includes at least 6,476 households. (Defendant argues that a discrepancy between Plaintiff's proposed class definition and the map they provided of the area means that the proposed class is even larger—consisting of more than 13,000 residences.)

At least 70 formal odor complaints were made to the Missouri Department of Natural Resources ("MDNR") from the neighboring public with regard to the Facility, describing "musty," "moldy," "paint," "chemical," "ether," and "acetonelike" odors. Doc. 56-2.

Ford's correspondence indicates that, in 2015, it "had concerns with buildup within the stacks as well as higher levels of bacteria inside the paint overspray collection pit" and that, in 2018, it had identified "a number of paint stacks that ha[d] build-up inside the stacks that could be contributing to the acetone and moldy odor complaints" and that it "believe[d] that cleaning the affected paint stacks, associated fan housings, and duct work w[ould] resolve the current odor concerns." Doc. 56-7, p. 1 (October 5, 2018 email from Ford to MDNR); *see also* Doc. 56-2, p. 2 (MDNR report noting that "the facility believes most of the odors are coming from the truck line" and "there is potential micro activity/build up happening in the stacks, so Ford KCAP is going to begin cleaning the stacks during down time"). Following an investigation, Ford "identif[ied] a number of paint stacks that have build-up inside the stacks that could be contributing to the acetone

and moldy odor complaints." *Id*. Ford noted that "paint build up within stacks can result in bacteria growth which can cause several different types of odors." *Id*. I

In September of 2018, in response to numerous odor complaints, Ford "reviewed the truck spray booth structures and operations" and "identif[ied] a number of paint stacks that ha[d] build-up inside the stacks that could be contributing to the odor complaints." *Id*., p. 3. Ford acknowledged that "[t]he descriptions in the odor complaints from 2015 and 2016 were similar in nature to the current [2018] complaints." *Id*., p. 1. However, MDNR investigated the odor complaints regarding KCAP and found zero violations.

In response to more than 3,500 data sheets that Plaintiff's counsel mailed to putative class members seeking complaints about odors from the Facility, 45 households from various parts of the proposed class area reported noxious odors on their properties. In other words, fewer than 1.5% of the proposed class members responded with odor complaints. Doc. 56-3; *see* Doc. 56-4 (map of respondents' locations). However, the smells were described not only as "paint," "fumes," "chemical," like "nail polish," and "moldy," or like "wet dirt," but also like "rotten egg," and urine-like. Doc. 56-3. One response stated that "[a]ny effect from the Ford plant is over ridden [*sic*] by the cement plant next to me . . . ."

In support of his motion for class certification, Plaintiff submits an expert report from Dr. Mark P. Cal, P.E., BCEE, an expert in atmospheric dispersion modeling, that indicates that he will be able to use a system called AERMOD, which "has been accepted as the preferred model by all local, state, and federal regulatory agencies," and "is also used extensively for non-regulatory analyses," to determine the extent to which odors from Ford are dispersed throughout the households of the proposed class members. Doc. 56-9 (Preliminary Report of Dr. Mark P. Cal), p. 7. Plaintiff also submits a preliminary report from Orell C. Anderson, MAI, FRICS, a mass

appraisal expert who states that he can conduct an analysis to determine what impact, if any, the odors from Ford have had on real estate values within the Class Area. Doc. 56-10 (SPA Report of Orell C. Anderson). Ford has moved to strike both experts' reports.

## II.  CLASS CERTIFICATION STANDARD

Federal Rule of Civil Procedure 23 provides for a two-part analysis upon a motion for class certification. Under Rule 23(a), the proposed class must satisfy the requirements of "numerosity, commonality, typicality, and fair and adequate representation." *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013). The proposed class also must meet at least one of the three requirements of Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Questions about the standing of class members and the adequacy of the class definition may also form part of the Court's inquiry on a motion to certify a class.

The burden of showing that the class should be certified rests on Plaintiffs. *Luiken,* 705 F.3d at 372. They will meet this burden only if, "after a rigorous analysis," the Court is convinced that the Rule 23 requirements are satisfied. *Comcast*, 133 S. Ct. at 1432 (quotation marks and citation omitted). The Court has broad discretion in deciding whether class certification is appropriate. *Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski,* 678 F.3d 640, 645 (8th Cir. 2012) (citation omitted).

In determining a class certification motion, the Court may consider "[m]erits questions . . . only to the extent[ ] that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). The Court's inquiry on a motion for class certification therefore is "tentative," "preliminary," and "limited." *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011).

III. **DISCUSSION**

    a. **Standing**

Although the Eighth Circuit does not require evidence that every member of a class has standing, nonetheless it has held that a class may not be certified if it is known to contain members who lack standing. *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010). Here, submissions from both Ford and the Plaintiff indicate that some putative class members decidedly were not injured and therefore lack standing.

Both of the claims that Plaintiff asserts require proof of injury. To succeed on a claim for negligence under Missouri law, a "plaintiff must establish that '(1) the defendant had a duty to the plaintiff; (2) the defendant failed to perform that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injury.'" *Hagerman v. Pfizer, Inc*., No. 3:20-05108-CV-RK, 2021 WL 2383718, *4 (W.D. Mo. June 10, 2021) (quoting *Martin v. City of Wash.*, 848 S.W.2d 487, 493 (Mo. banc 1993)). "Nuisance under Missouri law is 'the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his property.'" *Smith v. ConocoPhillips Pipe Line Co.,* 801 F.3d 921, 925 (8th Cir. 2015) (quoting *Frank v. Envtl. Sanitation Mgmt., Inc.,* 687 S.W.2d 876, 880 (Mo. 1985)). Thus, for either a negligence or nuisance claim, some harm is required.

Here, many members of the putative class appear not to have been affected by odors from the Facility. Plaintiff's counsel has presented data sheets from less than 1.5% of the more than 3,500 putative class members to whom they mailed them that suggest that odors allegedly from the Facility have bothered them. However, five of those who returned data sheets indicated that they have not smelled any odors at all. *See* Doc. 56-3 at 4, 20, 40, 45. Further, Ford has furnished declarations from 51 members of the putative class, from various locations within the proposed class area, stating that they have not experienced any offending odors from the Facility. Doc. 66-

7. Three of those declarants live on the same street as Plaintiff, and indeed, one of them is Plaintiff's next-door neighbor. Doc. 66-7 at 46, 55, 67. Additional declarants stated that, although they smelled odors at times that could have been from the Facility, the odors did not bother them. *See, e.g.,* Doc. 66-7, p. 57. Thus, it appears that at least some members of the putative class were not harmed by purported emissions from the Facility.

The fact that some putative class members have stated that their use and enjoyment of their homes was not affected by Defendant's emissions suggests that they lack standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (holding that plaintiff must have suffered an "injury in fact" to have standing); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised*, 136 S. Ct. 1540, 1548 (2016) (holding that, for plaintiff to have standing, the injury must be both concrete and particularized, meaning that it "must affect the plaintiff in a personal and individual way"). "A district court may not certify a class . . . if it contains members who lack standing." *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011).

The Court might have been able to address the standing concern by excluding those known to have not sustained injury from the class. However, as discussed below, Plaintiff's proposed class does not satisfy other requirements for certification, so narrowing the proposed class definition to exclude those who have denied any injury would not by itself salvage the proposed class.

### b. Whether the Class Is Adequately Defined

The first hurdle that Plaintiff fails to surmount is that of the class definition. The Eighth Circuit "adheres to a rigorous analysis of the Rule 23 requirements, which includes that a class must be adequately defined and clearly ascertainable." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016) (quotation marks and citation omitted). Ford questions

the adequacy of Plaintiff's class definition, arguing that Plaintiff's proposed geographical boundaries appear to have been arbitrarily selected.

Plaintiff seeks certification of a class of residents within a two-mile perimeter from the Facility's boundaries. As discussed above, Ford has supplied more reports of lack of injury within the putative class than Plaintiff has submitted of injury, which itself raises preliminarily the question of whether the class definition is too broad.

Additional considerations compel the conclusion that the class has been too broadly defined. First, Plaintiff's counsel themselves do not appear to have a clear idea of what the boundaries of the class are. Plaintiff's proposed class purportedly consists of those residing within a two-mile radius of the Facility's boundaries, but Plaintiff's map shows a proposed class area that consists of a two-mile radius from a certain point within the Facility—a significant discrepancy given that, according to Ford, the Facility itself consists of 1,269 acres. *Compare* Doc 56-1 (Complaint), ¶ 65 ("Plaintiff seeks to represent a Class of persons preliminarily defined as: All owner/occupants and renters of residential property residing within two (2) miles of the Plant's property boundary."); *with* Doc. 56, p. 5 ("The proposed class area is depicted on the attached map. [Ex. 6, Proposed Class Area]") *and* Doc. 56-6 (map showing two-mile radius from central point in Facility). Even after Ford pointed this discrepancy out, arguing that the larger class area actually proposed doubles the number of putative class members, from approximately 6,500 to approximately 13,000, Plaintiff made no effort to address the issue in its reply papers.

The fact that Plaintiff tied the proposed class boundary to the perimeter of the facility, rather than a particular source or sources of emissions within the Facility's grounds, further suggests that the class area was derived arbitrarily.

The map showing the locations of putative class members who submitted data sheets further suggests that the two-mile radius was arbitrarily chosen and results in a proposed class area that is overbroad. None of the respondents reside near the boundary of the proposed class area. Indeed, of the six respondents specifically identified in Plaintiff's paralegal's affidavit, the one who lives farthest from the Facility is less than 1.5 miles away. *See* Doc. 56-5, ¶ 8. Even on the map showing the locations of all of the respondents, there is a significant gap between the respondent furthest away from the facility and the proposed class boundary. That map shows a radius of two miles from a central point in the Facility, not a radius of two miles from the perimeter. *See* Doc. 56-4. If Plaintiff's proposed class boundaries of two miles from the Facility's perimeter were in fact employed, the gap between the farthest respondent and the class boundary would further increase.

In fact, multiple federal courts have rejected attempts to certify classes of plaintiffs residing within even a more narrow boundary of 1.5 miles from a facility in cases alleging torts based on the emission of noxious odors. *See Lloyd v. Covanta Plymouth Renewable Energy, LLC*, No. CV 20-4330, 2022 WL 407377, at **7–9 (E.D. Pa. Feb. 10, 2022) (denying motion to certify class in case alleging tortious odor emissions over 1.5-mile radius from facility); *Brooks v. Darling Int'l, Inc.*, No. 114CV01128DADEPG, 2017 WL 1198542, at **8-9 (E.D. Cal. Mar. 31, 2017) (same); *Hamilton v. 3D Idapro Solutions, LLC*, 2019 WL 9089916, at **4-5 (W.D. Wis. Aug. 1, 2019) (same).

Plaintiff's preliminary expert reports do not supply any explanation as to why the proposed class area's boundaries were chosen. Dr. Mark Cal has not yet performed any analysis. At this stage, he states only that his model *can* show which properties may have been impacted. *See* Doc. 56-9 (Preliminary Report for Class Certification by Dr. Mark P. Cal, P.E., BCEE), p. 3 ("A detailed

atmospheric dispersion modeling analysis centered around the Ford Claycomo facility can determine the frequency, intensity and location of nuisance odors within the class area. This would allow for a determination of which residential properties within the class area are impacted by Ford Claycomo's emissions and to what extent."). Thus, his report does not lend any support to Plaintiff's class definition. *Cf. Dudley v. API Indus., Inc.*, No. 30905/2018, (N.Y. Sup. Ct. Rockland Co. Jan. 3, 2022), Doc. 372, pp. 30-31, 33 (finding that "Dr. Cal has, for purposes of a class certification application, demonstrated that residents in the proposed class area of 1.5 miles from the facility are in the path of odor transport from the facility," where "Dr. Cal concluded based on his data collection as described more fully in his report that the residents who reported noxious odors . . . are in the path of 'odor transport' from the Defendant's facility"). The preliminary report of Orell Anderson, which states that he can conduct an analysis to determine what impact, if any, Ford's odors have had on real estate values within the proposed class area, does not bear at all on the issue of whether the proposed class area is overbroad.

Given the breadth of the proposed class area, some evidence or explanation to support the proposed boundary should have been furnished, or a narrower boundary should have been proposed. The lack of any logical or factual basis for the broad proposed class area by itself warrants denial of the motion to certify the class. *See, e.g., Burkhead v. Louisville Gas & Elec. Co.*, 250 F.R.D. 287, 292–93 (W.D. Ky. 2008) (denying class certification where, *inter alia*, "Plaintiffs . . . offer[ed] no evidence whatsoever that the airborne contaminants might have spread in all directions from LG & E's facility for a distance of up to two miles," noting that "Plaintiffs' request for class certification contain[ed] a startling and near-total lack of evidence linking the fallout and/or odors about which Plaintiffs complain to the substances that LG & E emits"); *Brooks v. Darling Int'l, Inc.*, No. 114CV01128DADEPG, 2017 WL 1198542, at *7 (E.D. Cal. Mar. 31,

2017) (noting that "courts have rejected proposed classes where plaintiffs failed to identify any logical reason for drawing the boundaries where they did" (quotation marks and citation omitted)); *Stoll v. Kraft Foods Glob., Inc.*, No. 1:09-CV-0364-TWP-DML, 2010 WL 3613828, at *2 (S.D. Ind. Sept. 6, 2010) (noting that, "even though a class definition is subject to refinement based upon further development of the record, Plaintiffs' evidence at this stage of the case should show that their proposed class definition is 'reasonable'"); *Cox v. Am. Synthetic Rubber Co.*, No. CIV.A. 3:06-CV-422-H, 2008 WL 5381909, at *2 (W.D. Ky. Dec. 18, 2008) (noting that, "where plaintiffs fail to produce evidence linking the proposed boundary to the environmental hazard, courts have denied certification" and denying certification where, *inter alia*, "Plaintiffs' sampling fail[ed] completely to cover the breadth of the proposed class" and there was "no basis for linking the boundaries to Defendant's actions at all"); *Brockman v. Barton Brands, Ltd.*, No. 3:06CV-332-H, 2007 WL 4162920, at *2 (W.D. Ky. Nov. 21, 2007) (noting that "courts define classes by geographical boundaries, but in such circumstances, courts often seek a reasonable relationship between the proposed boundary and the defendants' allegedly harmful activities" and that "courts have rejected proposed classes where plaintiffs failed to "identify any logical reason for drawing the boundaries where they did") (quotation marks and citation omitted); *Duffin v. Exelon Corp.*, No. CIV A 06 C 1382, 2007 WL 845336, at *4 (N.D. Ill. Mar. 19, 2007) ("Plaintiffs do not cite authority supporting certification of a geographically-based, 6,500 member class where there is no evidence of area-wide contamination. Plaintiffs' class definition is overbroad and they have failed to identify a sufficiently definite class." (citations omitted)); *Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 603 (D. Colo. 1990) (finding that there was no properly defined class where "plaintiffs arbitrarily ha[d] drawn lines on a map[] and declared that certain persons within those geographical

boundaries constitute a class," and "failed to identify any logical reason . . . for drawing the boundaries where they did").

While, the Court might have attempted to narrow the class definition in lieu of denying certification entirely, here, as in *Hamilton*, the plaintiff "has not provided the information necessary to craft an appropriately narrow class definition," and "[t]here is simply no evidence that the court could rely on to determine which areas have potentially been subjected to [defendant]'s emissions and which areas have not." 2019 WL 9089916, at *5. Thus, denial of certification of the class proposed is the appropriate course of action.

### c. **Rule 23(a)**

Even if Plaintiff had defined the class adequately, he has failed to satisfy *all* of the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequate representation— a prerequisite for class certification, and for that additional reason, denial of the motion for class certification is warranted.

#### 1. **Numerosity**

Rule 23(a)(1) requires that a class be sufficiently numerous to render joinder of all members impracticable. In assessing whether the numerosity requirement has been met, courts examine factors such as the number of persons in the proposed class, the nature of the action, the size of the individual claims, and the inconvenience of trying individual claims. *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 561 (8th Cir. 1982).

Joinder of more than 6,000 individuals (and possibly 13,000 individuals) would be impracticable and unduly burdensome. *See M.B. by Eggemeyer v. Corsi*, 327 F.R.D. 271, 278 (W.D. Mo. 2018) (finding joinder of "more than 3,000 children" to be "impracticable and unduly burdensome"); *Van Orden v. Meyers*, No. 09-00971 AGF, 2011 WL 4600688, *6 (E.D. Mo. Sept. 30, 2011) (finding numerosity requirement satisfied where proposed class consisted of 150

11

members, noting that "joining each of the putative plaintiffs individually and trying separate suits for each would be wasteful, duplicative, and time consuming," as "much of the evidence and many of the witnesses would be the same in each case"). The Court finds that the proposed class satisfies the numerosity requirement.

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs must show that their class claims "depend upon a common contention" that "is capable of classwide resolution," such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541 (2011). Commonality "'does not require that every question of law or fact be common to every member of the class . . . and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.'" *Downing v. Goldman Phipps PLLC*, No. 13-206 CDP, 2015 WL 4255342, at *4 (E.D. Mo. July 14, 2015) (quoting *Paxton*, 688 F.2d at 561); *see also Ebert v. General Mills, Inc.*, 823 F.3d 472, 478 (8th Cir. 2016) ("[A] single common question 'will do' for purposes of Rule 23(a)(2).") (citing *Dukes*, 131 S. Ct. at 2556). Commonality is easily satisfied in most cases. *Wineland v. Casey's General Stores, Inc.*, 267 F.R.D. 669, 674 (S.D. Iowa 2009) ("The burden imposed by [the commonality] requirement is light and easily met in most cases.") (citing *In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 603 (D. Minn. 1999); Newberg on Class Actions § 3:10 (4th ed.)).

Here, questions concerning Ford's emissions at least are common to the putative class. The commonality requirement thus is satisfied. *See, e.g., Lloyd v. Covanta Plymouth Renewable Energy, LLC*, No. CV 20-4330, 2022 WL 407377, at *5 (E.D. Pa. Feb. 10, 2022) (finding that "the

reasonableness of [defendant]'s odor mitigation practices is a question common to the putative class" and plaintiff therefore "has satisfied the commonality requirement under Rule 23(a)").

### 3. **Adequacy**

Rule 23(a)(4) requires that the class representative and class counsel "fairly and adequately protect the interests of the class." The adequacy requirement is met where: "(1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously; and (2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *Carpe v. Aquila, Inc.,* 224 F.R.D. 454, 458 (W.D. Mo. 2004) (internal quotes omitted). This requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997).

Ford argues that the adequacy requirement cannot be satisfied here for three reasons. First, Ford argues that Plaintiff "will not vigorously prosecute the interests of the class." Plaintiff stated at his deposition that he expected to spend "the minimal" time on this case, and that he "really doesn't look at" discovery requests and responses. He said, "I figured my attorneys, they prepared it so I figured they knew what they was talking about." He had not read the Complaint. In reply, Plaintiff notes that he provided timely and complete discovery responses and sat for a day-long deposition.

Ford also complains that Plaintiff stated that he did not know who he was representing other than himself. But Plaintiff's statement is not inaccurate, given the procedural posture of this case: unless and until a class is certified, he is merely an individual, representing only himself.

Still, the adequacy inquiry poses a challenge for Plaintiff. Federal courts, including at least one in Missouri, have held that "a plaintiff proposing to be a class representative cannot adequately do so where that plaintiff has voluntarily for[]gone personal injury claims." *Henke v. Arco Midcon,*

*L.L.C.*, No. 4:10CV86 HEA, 2014 WL 982777, at *11 (E.D. Mo. Mar. 12, 2014) (citing *Burkhead v. Louisville Gas & Elec. Co.,* 250 F.R.D. 287, 296 (2008)). *Henke* noted that "courts have repeatedly held that the failure to seek full recovery by splitting out personal injury, property damage, and/or injunctive relief claims creates a significant conflict of interest destroying adequacy of representation." *Henke*, 2014 WL 982777, at *11 (citing *Martin v. Home Depot U.S.A., Inc.,* 225 F.R.D. 198, 203–04 (W.D.Tex.2004); *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 209 F.R.D. 323, 340 (S.D.N.Y. 2002)).

Here, multiple data sheets suggest that some plaintiffs may have personal injury claims. *See* Doc. 56-3 at 1 (complaining of headaches); *id.* at 2 (complaining of headaches and trouble breathing); *id.b* at 5 (stating that the odors exacerbated asthma and may cause headaches and sinus problems); *id.* at 13 (stating that odors affect asthma); *id.* at 19 (same); *id.* at 15 (asserting that the odors caused dry eyes and "up[p]er respiratory problems"); *id.* at 15 (stating that kids are asthmatic and odors cause cough); *id.* at 18 (complaining of respiratory problems since moving in); *id.* at 6 (stating that odors "messed with my COPD and eczema"). Plaintiff's failure to assert personal injury claims would result in a waiver by all class members of their right to bring personal injury claims based on the same circumstances. *See Collins v. Burg*, 996 S.W.2d 512, 515–16 (Mo. Ct. App. 1999) (noting that Missouri adheres to the principle that "a single wrongful or negligent act which causes injury to both the person and property of the same individual constitutes only one cause of action but with separate items of damages," and therefore, "such a cause of action cannot be split; and a judgment in an action for recovery for one item of damage will bar a separate action to recover for the other item") (citing, *Chamberlain v. Missouri—Arkansas Coach Lines, Inc.*, 354 Mo. 461, 189 S.W.2d 538, 539–40 (Mo.1945); *Lee v. Guettler,* 391 S.W.2d 311, 313 (Mo. 1965)).

Hence, there is a conflict between Plaintiff and those members of the putative class who might have recovered for personal injury.

Plaintiff has made no effort to rebut Ford's argument that Plaintiff's decision not to seek damages for personal injury renders him an inadequate representative. Given the case law discussed above and Plaintiff's lack of response, the Court cannot but conclude that the conflict of interest renders Plaintiff an inadequate representative. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."); *Henke*, 2014 WL 982777, at *11 ("[B]ecause Plaintiffs assert claims only for property damage, they are not adequate representatives and their proposed classes fail to meet this requirement.").

### 4. **Typicality**

The typicality requirement is met when the claims or defenses of the representative party are typical of those of the class. Fed. R. Civ. P. 23(a)(3). In determining typicality, courts consider whether the named plaintiff's claim "arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir. 1996). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (citation omitted). The typicality requirement "is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995).

For the same reason that Plaintiff is not an adequate representative of class members with potential personal-injury claims, the typicality requirement is not satisfied. *See Henke v. Arco Midcon, L.L.C.*, No. 4:10CV86 HEA, 2014 WL 982777, at *10 (E.D. Mo. Mar. 12, 2014) (finding

that the typicality requirement was not met where, *inter alia*, "[s]ome plaintiffs may allege only property damage; [while] other plaintiffs might allege economic loss or even personal injury").

### d. Rule 23(b)

Because Plaintiff's proposed class definition is too broad and Plaintiff has not met the adequacy and typicality requirements of Rule 23(a), the Court need not consider whether the proposed class has met the requirements of Rule 23(b). *See, e.g., Frazier v. PJ Iowa, L.C.*, 337 F. Supp. 3d 848, 874 (S.D. Iowa 2018) ("Because the Court has found that Plaintiffs have not met the threshold requirements of Rule 23(a), the Court need not discuss the Rule 23(b) requirements.").

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for class certification, Doc. 56, is DENIED without prejudice because the class definition is too broad and Plaintiff is not an adequate class representative. Ford's motions to strike Plaintiff's preliminary expert reports, Docs. 62 and 64, are DENIED as MOOT.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: September 19, 2022
Jefferson City, Missouri